**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOHAMMED RAHMAN,<br>*Plaintiff,*<br>v.<br>CITIBANK, N.A.,<br>*Defendant.* | **Docket No.: 1:26-cv-06250**<br>**COMPLAINT** |

Imagine being a retired, long-standing Citibank customer and learning that the bank issued a new debit card on your account and mailed it to an address you never authorized. Before you ever received or even knew about the card, a criminal used the compromised account to take $24,000 of your money. Citibank itself could not verify the activity and restricted the account. Yet, after Plaintiff, Mohammed Rahman ("Plaintiff") promptly reported the fraud, Defendant, Citibank, N.A. ("Citibank") first issued provisional credit and then reversed it based on a conclusory assertion that the transaction appeared consistent with his banking activity or the device used. Citibank did so despite its own records showing that the new card had been sent to an unknown address. The resulting loss placed Plaintiff, a retired man, in severe financial distress and caused or aggravated serious physical and emotional harm, including a hospitalization. Plaintiff brings this action under the Electronic Fund Transfer Act ("EFTA") and Regulation E to recover the stolen funds and the damages caused by Citibank's unlawful handling of his dispute.

Plaintiff, by his attorneys, alleges and complains of Citibank as follows:

## **PRELIMINARY STATEMENT**

1. Plaintiff is a victim of identity theft and unauthorized electronic fund transfer conducted through his Citibank account ending in 5656 (the "Account").

2. On or about December 5, 2025, Citibank issued and mailed a new debit card associated with the Account to "9 Hillman Place," an address Plaintiff did not provide, recognize, or authorize. Plaintiff's actual address was and remains 140 Beverly Place, Levittown, NY 11756.

3. Plaintiff did not request the new debit card, did not authorize any change of address for the Account, did not receive the card, and did not authorize any person to possess or use it.

4. On or about December 21, 2025, Plaintiff learned that the Account had been compromised after receiving a letter from Citibank stating that Citibank had been unable to verify recent activity and had restricted the Account. Plaintiff then discovered Citibank's earlier December 5, 2025 email showing that the new card had been mailed to the unauthorized address.

5. Plaintiff promptly reported an unauthorized $24,000 debit card transaction identified as "ElRusso.com New York NY" (the "Disputed Transaction"). Citibank opened dispute case number D-828193271225 and provisionally credited the Account but then reversed the credit after an inadequate and unreasonable investigation.

6. Citibank's denial ignored the most important objective evidence of fraud: Citibank's own records showed that a new debit card had been mailed to an address Plaintiff never authorized, and Citibank itself had been unable to verify the resulting account activity.

7. Plaintiff sent Citibank a detailed written appeal on March 7, 2026, but Citibank did not meaningfully respond or restore the $24,000.

8. As a direct consequence of the loss of access to his funds and Citibank's reversal of the provisional credit, Plaintiff suffered severe financial hardship, emotional distress, physical

symptoms, medical expenses, and hospitalization on March 25-26, 2026.

9. Despite their obligations under the EFTA, Defendant has failed to promptly credit the Plaintiff's account in full. Defendant failed to conduct a reasonable investigation, disregarding clear evidence of fraud and leaving Plaintiff wrongfully liable for the unauthorized transactions.

10. Accordingly, Plaintiff brings claims against Defendant for violations of the EFTA.

## JURISDICTION AND VENUE

11. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367(a) because it is so related to the federal claim that it forms part of the same case or controversy.

12. Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant regularly conducts business here.

## PARTIES

13. Plaintiff is an individual consumer within the meaning of the EFTA (15 U.S.C. § 1693(a)(6)) and resides at 140 Beverly Place, Levittown, NY, 11756.

14. Defendant is a "financial institution" as defined by the EFTA (15 U.S.C. § 1693(a)(7)). Defendant's main office is located at 399 Park Ave Front. 1, New York, NY 10022.

## FACTS

15. Plaintiff has maintained a banking relationship with Citibank for many years and entrusted Citibank with funds important to his retirement and daily living expenses.

16. Plaintiff has never authorized Citibank to mail a debit card associated with the Account to 9 Hillman Place.

17. Plaintiff did not submit an address-change request identifying 9 Hillman Place, did not request that a new debit card be mailed there, and did not authorize any third party to make such requests on his behalf.

18. On December 5, 2025, Citibank sent Plaintiff an email stating that a new debit card for the Account had been mailed and was expected to arrive by December 10, 2025.

19. The December 5, 2025, email identified the delivery address as “9 Hillman Place.” Plaintiff did not know anyone associated with that address and had never authorized Citibank to use it for the Account.

20. Plaintiff did not discover the December 5, 2025 email when it was sent. He first learned of it on December 21, 2025, after Citibank separately alerted him that it could not verify activity on the Account.

21. Upon information and belief, an unknown perpetrator obtained access to the Account, caused Citibank to issue and mail the new debit card to the unauthorized address, obtained or activated that card, and used it to conduct the disputed transaction.

22. Citibank possessed records identifying when and how the new card was requested, what authentication was used, whether the Account’s address was changed, where the card was delivered, how the card was activated, and what device, merchant, location, token, or other information was associated with the disputed transaction.

23. When Plaintiff asked Citibank why the new card had been sent to an unauthorized address, Citibank did not provide a satisfactory explanation.

24. On or about December 21, 2025, Plaintiff received a letter from Citibank stating that Citibank had been unable to verify recent activity on the Account, that it was important to confirm whether the activity had been authorized, and that Citibank had restricted the

Account.

25. After receiving the letter, Plaintiff immediately reviewed his account and email communications and discovered the unauthorized card mailing and fraudulent activity.

26. Plaintiff identified the Disputed Transaction.

27. Plaintiff did not make or authorize the Disputed Transaction, did not participate in it, did not know the perpetrator, did not receive any goods, services, funds, or other benefit from it, and had no legitimate reason to conduct it.

28. Plaintiff never received or possessed the new card mailed to 9 Hillman Place and never authorized anyone to use that card or any associated account credentials.

29. Upon discovering the fraud, Plaintiff promptly visited a Citibank branch, notified Citibank of the unauthorized activity, disputed the Disputed Transaction, and asked Citibank to block the debit card obtained by the perpetrator.

30. Citibank accepted Plaintiff's notice of error and opened dispute case number D-828193271225.

31. By the time Citibank received Plaintiff's dispute, Citibank's own records already showed multiple indicators of account takeover and fraud, including the unauthorized card mailing and Citibank's inability to verify recent activity.

32. On January 6, 2026, Citibank sent Plaintiff a letter confirming that it had opened the dispute and had applied provisional credit of $24,000 while its investigation remained pending.

33. Only ten days later, on January 16, 2026, Citibank sent Plaintiff a letter stating that it had reviewed the dispute and determined that the transaction details, including the amount spent, frequency of the transaction, and/or device used, appeared to be consistent with

Plaintiff's banking activity.

34. Citibank's January 16 letter stated that it would remove the $24,000 provisional credit on January 28, 2026 and that the removal would appear as a withdrawal on the Account statement.

35. Citibank's stated rationale was conclusory and internally inconsistent with its own December 21, 2025 fraud alert and account restriction, as well as its records showing that a new debit card had been mailed to an address Plaintiff never authorized.

36. Citibank did not explain who requested the new debit card, how Citibank authenticated that request, why Citibank mailed the card to 9 Hillman Place, who activated it, how the Disputed Transaction could be attributed to Plaintiff, or why Citibank's own inability to verify the activity did not support Plaintiff's claim.

37. Citibank did not identify any specific evidence demonstrating that Plaintiff authorized, participated in, or benefited from the Disputed Transaction.

38. On or about January 28, 2026, Citibank removed the provisional credit and again charged the $24,000 loss to Plaintiff.

39. The $24,000 represented substantial personal funds and was especially consequential because Plaintiff is retired and depends on his savings and fixed or limited retirement income for essential living expenses

40. On March 7, 2026, Plaintiff sent Citibank a written appeal seeking reconsideration of the reversal and reimbursement of the $24,000.

41. In that written appeal, Plaintiff explained that the reversal had placed him in a severe financial predicament, emphasized that he had promptly reported the fraud and fully cooperated with Citibank, and asked Citibank to reevaluate the claim and restore the

$24,000.

42. The March 7, 2026 written appeal identified Plaintiff, the Account, the amount in dispute, the Disputed Transaction, and the reasons Plaintiff believed an error had occurred, and therefore provided Citibank with sufficient written notice to investigate and respond under the EFTA and Regulation E.

43. Citibank did not meaningfully respond to the March 7 appeal, did not conduct or communicate a renewed investigation, and did not restore the $24,000.

44. Plaintiff filed a police report concerning the fraud on April 29, 2026.

45. Plaintiff also filed an identity-theft report with the Federal Trade Commission on June 17, 2026.

46. The police and FTC report further documents Plaintiff's consistent position that he was the victim of identity theft and did not authorize or benefit from the Disputed Transaction.

47. Citibank's reversal deprived Plaintiff of access to $24,000 and caused severe financial strain, difficulty meeting daily and essential expenses, loss of time, inconvenience, frustration, anxiety, and emotional distress.

48. During the period of acute financial and emotional stress following Citibank's reversal and refusal to reimburse him, Plaintiff was hospitalized on March 25 and March 26, 2026, at Catholic Health Physician Partners/St. Francis Heart Center.

49. Plaintiff alleges that the sudden loss of $24,000, Citibank's reversal of the provisional credit, and Citibank's failure to meaningfully address the objective evidence of identity theft caused or aggravated the stress and physical condition associated with his hospitalization. Plaintiff incurred or may incur medical expenses and other consequential damages as a result.

50. As of the filing of this action, Citibank still has not reimbursed Plaintiff for the Disputed Transaction and has not otherwise corrected the Account.

51. Citibank knowingly and willingly concluded that the Account was not in error when such conclusion could not reasonably have been drawn from the evidence available to it at the time of its investigation, making it liable to Plaintiff for treble damages pursuant to 15 U.S.C § 1693f(e)(2).

52. At all times pertinent hereto, the conduct of Citibank as well as that of its agents, servants, and/or employees was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of Plaintiff herein.

53. Citibank's systemic failures not only harm individual consumers like Plaintiff but also undermine public confidence in electronic banking systems. Such failures highlight Citibank's disregard for its legal obligations, perpetuating consumer vulnerability to electronic fraud, and further victimizing individuals who rely on Citibank's promises of security.

## CAUSE OF ACTION

### Violations of EFTA, 15 U.S.C. § 1693, *et seq.*

54. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

55. The EFTA governs any "electronic funds transfer" referred to herein as an "EFT", which it defines as any transfer of funds that is initiated through an electronic terminal, telephonic instrument, or computer that orders, instructs, or authorizes a financial institution, such as Citibank, to debit or credit an account. 15 U.S.C. § 1693a(7). Everyday examples of EFTs include purchases made using debit cards, ATM withdrawals, direct deposits, online bill payments, peer-to-peer payments using mobile apps, transfers among consumers'

accounts, and all other debits or credits initiated by computer or mobile device. *Id*; Consumer Financial Protection Bureau's CFPB Regulation E (12.C.F.R §1005.3(b)(1)).

56. The EFTA and Regulation E protect consumers from unauthorized EFTs and other errors. EFTs are unauthorized when they do not benefit consumers and are made by persons who are not the consumers or other authorized users. 15 U.S.C. § 1693a(12). When scammers fraudulently infiltrate online or mobile banking to electronically execute transactions that cause banks, such as Citibank, to move money into or out of consumers' accounts, these are unauthorized EFTs.

57. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Citibank bears the responsibility for unauthorized transfers like the present one.

58. The EFTA caps consumer liability for unauthorized electronic fund transfer at $50 and the transaction at issue exceeds that amount. Plaintiff reported the fraud promptly within the statutory period, thus triggering the EFTA's consumer liability cap under 15 U.S.C. § 1693g(a).

59. The EFTA and Regulation E also require banks to disclose the terms and conditions that apply to EFTs in readily understandable language. 15 U.S.C. § 1693c(a); 12 C.F.R. § 1005.4.

60. Consumer protections in the EFTA and Regulation E, including unauthorized EFTs, cannot be waived or limited by any agreement, including consumers' deposit agreements, online account agreements, or fund transfer agreements with their banks. 15 U.S.C. § 1693l.

61. The practical result of the EFTA and Regulation E is that banks bear the bulk of losses when consumers' funds are lost due to scammers' large-dollar, unauthorized EFTs. Banks

thus are incentivized to prevent unauthorized access to consumers' bank accounts through online or mobile channels, thereby fostering consumer confidence in the electronic banking system.

62. Citibank violated 15 U.S.C. § 1693f and 12 CFR §1005.11 by failing to conduct in good faith, timely and adequate investigation of Plaintiff's dispute; improperly reversing provisional credit without providing documentation supporting its decision, and failure to provide the required written explanation and investigation results to Plaintiff, as mandated by Regulation E (12 CFR § 1005.11). Banks bear the burden of proving that a transaction was authorized. *See* Regatos v. N. Fork Bank, 257 F. Supp. 2d 632 (S.D.N.Y. 2003). Citibank failed to produce any documentary or evidentiary support proving that Plaintiff authorized the Disputed Transaction, despite its burden of proof under 15 U.S.C. § 1693g(b).

63. Despite its duty under 12 C.F.R. § 1005.11 to conduct a reasonable investigation within ten business days and either resolve the claim or provide a provisional credit, if more investigation time (up to 45 days was needed), Citibank failed to do either, thus violating the EFTA.

64. Citibank failed to conduct a reasonable investigation.

65. A reasonable investigation would have included review of one or more of the following items, which would have led Citibank to conclude that fraud had occurred and would have revealed, *inter alia*, the following:

a. Plaintiff did not authorize the Disputed Transaction;

b. Plaintiff promptly reported the Disputed Transaction;

c. Plaintiff has no history of making false or unverifiable fraud report;

d. Plaintiff has no criminal history;

e. Plaintiff has no history of irresponsible use of the Account;

f. Plaintiff has no history of frauds with Citibank or any other financial institution; and

g. No other proof exists to refute Plaintiff's claim.

66. Furthermore, the EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b). Citibank failed to produce any documentary or evidentiary support proving that Plaintiff authorized the disputed transaction, despite its burden of proof under 15 U.S.C. § 1693g(b).

67. This burden of proof cannot be and was not plausibly met with regard to the contested transaction(s).

68. Citibank's acts and omissions set forth above constitute violations of the EFTA.

69. As a direct and proximate result of Citibank's violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

70. Plaintiff has suffered actual damages including, but not limited to, loss of access to funds, economic hardship, inconvenience, lost time spent disputing the unauthorized charge, and damage to his financial standing and creditworthiness. Plaintiff's personal and professional life has also been significantly disrupted due to Citibank's wrongful actions, causing unnecessary stress and financial insecurity.

71. Citibank has produced no evidence to Plaintiff or otherwise demonstrated that Plaintiff authorized, participated in, or benefited from the Disputed Transaction, thereby failing to meet its statutory burden under 15 U.S.C. § 1693g(b). By reversing the provisional credit without fulfilling this burden, Citibank violated clear statutory obligations imposed by the

EFTA and Regulation E.

72. Citibank's failure to provide Plaintiff with any investigative findings, copies of documents reviewed, or evidence relied upon to reverse the provisional credit directly violates Regulation E (12 C.F.R. §1005.11(d)), which explicitly requires financial institutions to share these findings and documents with consumers to justify their decisions. Citibank's failure to comply not only deprived Plaintiff of critical information but also prevented Plaintiff from effectively challenging Citibank's wrongful decision.

73. Citibank's actions were not only negligent but demonstrated deliberate disregard for clear evidence provided by Plaintiff and regulatory requirements. Citibank's pattern of ignoring consumer protections under the EFTA reflects deliberate indifference, warranting statutory and treble damages to deter future violations.

74. Citibank's failure to provide the required written explanation of the investigation, lack of reasonable basis for reversing the provisional credit, and disregard for Plaintiff's timely provided evidence, including a police report and FTC report, demonstrates Citibank's willful violation and bad faith under 15 U.S.C. § 1693f(e). Accordingly, Plaintiff is entitled to treble damages pursuant to the EFTA.

## DEMAND FOR JURY TRIAL

75. Plaintiff hereby respectfully requests a trial by jury for all claims and issues in his Complaint to which he is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in his favor against Citibank as follows:

A. Enter judgment for Plaintiff on the cause of action;

B. Enter an injunction requiring Citibank to comply with the EFTA and to train its employees accordingly;

C. Declaratory judgment that Citibank's policies and practices regarding electronic fund transfer disputes violate the EFTA and Regulation E, specifically 12 C.F.R. §1005.11;

D. Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

E. Statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A);

F. Treble damages pursuant to 15 U.S.C. § 1693f(e) due to Citibank's bad faith;

G. An injunction requiring Citibank to adopt, clearly disclose, and strictly implement Regulation E compliant procedures for investigating electronic fund transfer disputes, including mandatory production of investigative documents and written explanations supporting the outcomes of such investigations;

H. Costs, litigation expenses, and reasonable attorney's fees pursuant to 15 U.S.C. § 1693m(a)(3); and

I. Award such other and further relief as may be just, equitable, and proper.

Dated: October 2, 2026

Respectfully submitted,

Subhan Tariq, Esq.
Tariq Law PC
Attorney for Plaintiff
99 Park Avenue, Suite 1530
New York, NY 10016
Telephone: (212) 804-9095
Email: subhan@tariqlaw.com